

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 10, 2021

**BY ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Alfredo Lichoa*, 20 Cr. 400 (JSR)

Dear Judge Rakoff:

    The Government respectfully submits this letter in connection with the sentencing of Alfredo Lichoa (the "defendant") in the above-captioned matter, currently scheduled for February 17, 2021 at 4:00 p.m. For the reasons set forth below, the Government respectfully submits that a sentence within the Guidelines range of 12 to 18 months, half of which may be satisfied by home detention, is appropriate in this case.

    **I.**    **Offense Conduct**

    The defendant is one of a web of individuals who participated in a scheme to launder what they believed to be criminal proceeds using various methods. One of those individuals, Jose Morely Chocron, was identified to law enforcement by a confidential source ("CS-1") in or around January 2019. Beginning in May 2019, CS-1, another confidential source ("CS-2"), and two undercover agents ("UC-1" and "UC-2") provided Chocron and his associates – Isaac Schachtel, Juan Marcos Matos Ruiz, Juan Carlos Balaguera Villamizar, and the defendant – with more than $1.5 million in funds that they represented were the proceeds of bribe payments to Brazilian public officials, and which the defendants agreed to launder. *See* Pre-sentence Investigation Report ("PSR") ¶¶ 15-34.

    Beginning in November 2019, Schachtel discussed with UC-1 the possibility of laundering funds through a "horseman's account," that is, a bank account established through a racetrack for a horse trainer or owner for the purpose of sending and receiving payments relating to racehorses. Schachtel described the defendant as someone who was well-positioned to advance such a scheme, through the administration of performance enhancing drugs to the horses that Schachtel and UC-1 purchased. *Id.* ¶ 27. On or about February 11, 2020, the defendant, Schachtel, UC-1 and UC-2 met in person. During that meeting, UC-2 described the illicit origin of the funds that he would be providing to Schachtel and the defendant, as follows: "The money that we are going to invest is coming from Brazil. Some politicians friends of ours who have received some payments." In response, the defendant stated, "I understand you perfectly!" *Id.* ¶ 28. Subsequently, outside of

Schachtel's presence, UC-2 provided the defendant with $50,000 in cash, which the defendant accepted and counted. At the conclusion of the meeting, the defendant left, carrying the cash. *Id.* ¶ 29.

On or about February 20, 2020, UC-1 met with the defendant and discussed the $50,000 that UC-2 had provided to him  Among other things, UC-1 reiterated that "those fifty [i.e., the $50,000], I don't know if he [UC-2] told you that it came from a bribery of a mayor from over there [i.e., Brazil]. . . . Some people wanted to put some Jet Skis in [sic] the beach over there . . . [so] they pay a bribe like that. . . those fifty came from there." *Id.* ¶¶ 30-31. The defendant told UC-1 that the $50,000 had been deposited into an account controlled by Schachtel and would be transferred to the defendant's horseman's account in order to purchase a racehorse, as the defendant, Schachtel, and the undercover agents had discussed. *Id.* ¶ 32. Ultimately, however, the funds were not used to purchase a racehorse, but were not returned to either undercover agent.

## II.     Procedural History

The defendant was charged by complaint on February 27, 2020 and arrested on March 9, 2020 in the Southern District of Florida. On or about August 6, 2020, the defendant was indicted in a one-count indictment with conspiracy to commit money laundering, in violation of Title 18, United State Code, Section 1956(h) (the "Indictment"). On October, 2020, the defendant pled guilty to the Indictment pursuant to a plea agreement (the "Plea Agreement"), in which the parties calculated the defendant's Criminal History Category as I, and the applicable Guidelines offense level as 13, resulting in a Guidelines range of 12 to 18 months' imprisonment.

In the PSR, finalized on January 6, 2021, the Probation Office ("Probation") conducted the same Guidelines calculation and also concluded that the applicable Guidelines range was 12 to 18 months' imprisonment, PSR at 25. Probation recommended a sentence of six month's imprisonment followed by two years of supervised release, six months of which would include a condition of home confinement. *Id*.

## III.    Discussion

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In this case, a sentence within the Guidelines range is necessary to reflect appropriately the nature and seriousness of the defendant's conduct, to promote respect for the law, and to afford adequate deterrence to those similarly situated to the defendant.

The defendant, in order to make money, agreed to accept $50,000 in cash that had been represented to him to be the proceeds of bribe payments that he been made to Brazilian public officials and to facilitate transactions with that cash that were designed to "clean" the funds by providing a legitimate-seeming source for them -- an "investment" in racehorses, purchased using his horseman's account. Although this proposed transaction was not consummated, the defendant accepted that cash from an undercover law enforcement officer, and, according to the defendant, it was deposited into a co-defendant's bank account so that it would be available once a racehorse purchase was arranged. The defendant was prepared to effectuate transactions that would disguise the illicit source of the cash with which he had been provided and took steps towards that end. Such conduct is serious and warrants a sentence within the Guidelines range.

### IV. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines range, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By: _____
Benet J. Kearney
Assistant United States Attorney
(212) 637-2260

cc: Christopher Conniff, Esq. (by email and ECF)
    Mary Brust, Esq. (by email and ECF)
    Probation Officer Simone Belgrave (by email)